No. 21-14396-G

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

**Roland Edger**

*Plaintiff-Appellant*

v.

**Krista McCabe, et al.**

*Defendants-Appellees*

---

Appeal from the United States District Court
Northern District of Alabama (No. 5:19-cv-01977-LCB)
*Honorable Liles C. Burke, United States District Judge*

---

**BRIEF OF PLAINTIFF-APPELLANT**

---

 s/ Henry F. (Hank) Sherrod III
Henry F. (Hank) Sherrod III
HENRY F. SHERROD III, P.C.
119 South Court Street
Florence, Alabama 35630
(256) 764-4141

*Attorney for Plaintiff-Appellant*

**Edger v. McCabe, et al.**
**No. 21-14396-G**

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

The undersigned counsel of record for Appellant, Roland Edger, certifies that

the following persons or entities have an interest in the outcome of this case:

1. **Burgess, C. Gregory** - Counsel for Defendants/Appellees

2. **Burke, Liles C.** - U.S. District Court Judge

3. **City of Huntsville, Alabama** - Defendant/Appellee

4. **Edger, Roland** - Plaintiff/Appellant

5. **Gushlaw, Stephanie M.** - Counsel for Defendants/Appellees

6. **Henry F. Sherrod III, P.C.** - Law firm representing Plaintiff/Appellant

7. **Lanier Ford** - Law firm representing Defendants/Appellees

8. **McCabe, Krista** - Defendant/Appellee

9. **Perillat, Cameron** - Defendant/Appellee

10. **Sherrod, Henry F. (Hank), III** - Counsel for Plaintiff/Appellant

11. **Smith, Lauren A.** - Counsel for Defendants/Appellees

No publicly traded company has an interest in the outcome of this case.

ii

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Roland Edger, the plaintiff below, requests oral argument. Edger believes oral argument would assist the Court.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS
     AND CORPORATE DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . ii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.     Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.    Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.   Course of Proceedings and Disposition in the Court Below . . . . . . . . . . . 8

IV.   Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

I.     The District Court Erred in Concluding That the Officers Were Entitled to
     Qualified Immunity for Their False Arrest of Edger for Resisting Officers'
     Demands That Edger, Who Was Obviously Just a Mechanic Working on a
     Customer's Disabled Car, Produce an ID Card. . . . . . . . . . . . . . . . . . . . 13

        A.    Because the Totality of the Circumstances Within the Knowledge of the

Officers Did Not Even Arguably Support a Reasonable Belief That Edger Was Engaged in Criminal Activity, Edger Could Not Be Lawfully Arrested for Resisting Officers' Demands for an ID card. . . . . . . . . 16

B.      Even if the Officers Had Arguable Reasonable Suspicion, the Officers Did Not Have Arguable Probable Cause to Arrest Edger for Resisting Officers' Demand for an ID Card Because Alabama, like Every Other State, Only Requires Drivers to Carry an ID Card. . . . . . . . . . . . . . 20

II.      Because a Reasonable Jury Could Find That the Officers Lacked Probable or Arguable Probable Cause to Arrest Edger, the District Court Erred in Granting Defendants' Motion for Summary Judgment on Edger's State Law False Arrest Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

III.      Because the Evidence Would Permit a Reasonable Jury to Conclude the Officers Acted Under a Mistaken Impression of the Law, the District Court Erred in Granting the City's Motion for Summary Judgment on Edger's State Law False Arrest Claim.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

v

# TABLE OF CITATIONS

## CASES

*Borders v. City of Huntsville*, 875 So. 2d 1168 (Ala. 2003) . . . . . . . . . . . . . 22, 23

*Brown v. City of Huntsville*, 608 F.3d 724 (11th Cir. 2010) . . . . . . . . . . . . . . . 23

*Cantu v. City of Dothan*, 974 F.3d 1217 (11th Cir. 2020). . . . . . . . . . . . . . . . 15

*Cozzi v City of Birmingham*, 892 F.3d 1288 (11th Cir. 2018). . . . . . . . . . . . . 14

*Crosby v. Monroe County*, 394 F.3d 1328 (11th Cir. 2004) . . . . . . . . . . . . . . . 14

*Cummings v. DeKalb County*, 24 F.3d 1349 (11th Cir. 1994) . . . . . . . . . . . . . . 8

*D.A.D.O. v. State*, 57 So. 3d 798 (Ala. Crim. App. 2009). . . . . . . . . . . . . . . . . 15

*Dahl v. Holley*, 312 F.3d 1228 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 13

*District of Columbia v. Wesby*, —— U.S. ——, 138 S.Ct. 577 (2018) . . . . . . . . 18

*Ex Parte City of Tuskegee*, 932 So. 2d 895 (Ala. 2005) . . . . . . . . . . . . . . . . . 22

*Ex Parte Cranman*, 792 So. 2d 392 (Ala. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 22

*Florida v. Bostick*, 501 U.S. 429 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Florida v. Royer*, 460 U.S. 491 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Franklin v. City of Huntsville*, 670 So. 2d 848 (Ala. 1995). . . . . . . . . . . . . . . . 23

*Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cnty.*,
    542 U.S. 177 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hill v. California*, 401 U.S. 797 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Illinois v. Wardlow*, 528 U.S. 119 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Jackson v. Sauls*, 206 F.3d 1156 (11th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . 19

*Jordan v. Mosley*, 487 F.3d 1350 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . 14

*Kentucky v. King*, 563 U.S. 452 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004) . . . . . . . . . . . . 13, 14

*Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169 (11th Cir. 2005) . . . . . 9

*Lewis v. City of West Palm Beach*, 561 F.3d 1288 (11th Cir. 2009). . . . . . . . . . . . 9

*Mathis v. Adams*, 577 Fed. Appx. 966 (11th Cir. 2014) . . . . . . . . . . . . . . . . . . 10

*Morris v. Town of Lexington*, 748 F.3d 1316 (11th Cir. 2014) . . . . . . . . . . . . . . 18

*Morton v. Kirkwood*, 707 F.3d 1276 (11th Cir. 2013). . . . . . . . . . . . . . . . . . . . . 9

*Mowell v. City of Milton, Georgia*, 810 F. Appx. 799 (11th Cir. 2020) . . . . . . . 14

*Perez v. Suszczynski*, 809 F.3d 1213 (11th Cir. 2016). . . . . . . . . . . . . . . . . . . . 10

*Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313 (11th Cir. 2010) (per curiam) . . . . 9

*Rankin v. Evans*, 133 F.3d 1425 (11th Cir. 1998) . . . . . . . . . . . . . . . . . . . . 13, 14

*Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . 9

*Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769 (2007) . . . . . . . . . . . . . . . . . . . . 9

*Skelly v. Okaloosa County Bd. Of County Comm'rs*, 415 Fed. Appx. 153
    (11th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
*Skop v. City of Atlanta*, 485 F.3d 1130 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . 14
*Terry v. Ohio*, 392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17
*United States v. Allison*, 953 F.2d 1346 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . 13
*United States v. Gray*, 213 F.3d 998 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 19
*United States v. Heard*, 725 Fed. Appx. 743 (11th Cir. 2018) . . . . . . . . . . . . . . 17
*United States v. Mendenhall*, 446 U.S. 544 (1980) . . . . . . . . . . . . . . . . . . . . . . . 17
*United States v. Sokolow*, 490 U.S. 1 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
*Williamson v. Mills*, 65 F.3d 155 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . 13
*Wood v. Kesler*, 323 F.3d 872 (11th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
*Young v. Eslinger*, 244 Fed. Appx. 278 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . 19

**Statutes**

Ala. Code § 11-47-190 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
Ala. Code § 13A-10-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Ala. Code § 13A-10-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Ala. Code § 15-5-30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16
Ala. Code § 32-6-9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# PRELIMINARY STATEMENT

This incident is recorded on video. The facts are not disputed in any material respect. Neither is the law. The district court reviewed the video and the law and concluded that there was not probable cause for Edger's arrest but dismissed Edger's claims anyway. This was a false arrest, says the district court, but because of qualified immunity, this is a false arrest for which there will be no legal accountability:

> The Court has pored over that footage, time and again, with the most critical eye permitted in accordance with law and the Federal Rules of Civil Procedure. And, the Court has concluded after each viewing, that Officers McCabe and Perillat didn't meet the standards set out in the Huntsville Police Department's mission statement. Those failings notwithstanding, that same bodycam footage shows that there's no genuine issue of material fact in this case. While Edger certainly committed no crime, Officers McCabe and Perillat had arguable–and only arguable–probable cause to arrest him as to one offense. As such, Defendants are entitled to summary judgment. But just by a hair's breadth.

[Doc.46 / Pg. 2]

While Edger appreciates the district court's diligence in reviewing the video, Edger fears the glare of qualified immunity jurisprudence kept the district court from seeing what was right before its eyes: an obviously unconstitutional arrest for which there is no qualified immunity.

## STATEMENT OF JURISDICTION

This is an appeal of a final judgment over which this Court has jurisdiction pursuant to 28 U.S.C. § 1291 and Federal Rules of Appellate Procedure 3 and 4.

## STATEMENT OF THE ISSUES

1.    Whether a police officer could have reasonably believed Edger, a mechanic working on a customer's car in a church parking lot who offered to assist officers in verifying who he was, was committing a crime.

2.    Whether a police officer could have reasonably believed Edger violated Alabama's stop and identify statute by resisting an officer's demand for an identification card.

## STATEMENT OF THE CASE

### I.    Nature of the Case

Plaintiff Roland Edger was arrested by City of Huntsville, Alabama officers and filed suit under 42 U.S.C. § 1983 alleging a constitutional violation (illegal seizure / false arrest) and a violation of state law against the officers and a state law claim against the city. This appeal challenges the district court's granting of defendants' motions for summary judgment.

### II.    Statement of Facts

On June 10, 2019, at 8:05 p.m., a security guard at Progressive Union Baptist Church in Huntsville, Alabama called to report that two Hispanic males were "messing with" an employee's car. He stated that they had taken a wheel off and were under the car. [Doc.28-7, Tab 1 (911 call) / 0:00-1:02; Doc.28-3 (Calls for Service Report) / Pg. 37] When asked if weapons were involved, the security guard noted that they probably had a tire iron for taking the tire off. [Doc.28-7, Tab 1 (911 call) / 1:28-1:36] The security guard stated he just wanted an officer to check the subjects out. [Doc.28-7, Tab 1 (911 call) / 3:24-28]

The subjects were Roland Edger, the plaintiff, and his stepson, Justin Nuby. Edger is a mechanic, among other things, and manages Auto Collision Doc in Huntsville. [Doc.28-1 (Edger Dep.) / Pg. 17-20] One of Edger's customers was the

3

wife of a church employee. The customer left the car key for Edger in an envelope at the front desk. At around 2:00 p.m., Edger went to the church and retrieved the key. [Doc.28-1 (Edger Dep.) / Pg. 60-63] Edger then inspected the car and realized he would need to return to the shop for additional tools. Edger pitched the envelope in the car, locked the car, and then left, keeping the key in his possession. [Doc.28-1 (Edger Dep.) / Pg. 66-67]

Edger, with Nuby to assist him, returned to the location before 8:00 p.m. and started working on the car. [Doc.28-1 (Edger Dep.) / Pg. 68-70] After a few minutes, Nuby informed Edger that a security car had shown up. [Doc.28-1 (Edger Dep.) / Pg. 80] The security car was actually a Huntsville Police Department cruiser driven by defendant McCabe. [Doc.28-9, Tab 1 (McCabe Body Cam) / 20:36:23-37] McCabe understood that the security guard called about someone working on a car and that her job was to verify that. [Doc.28-9, Tab 1 (McCabe Body Cam) / 20:58:50-56]

As Edger was facing the customer's car with his back towards McCabe, Edger heard defendant McCabe ask him what he was doing. Edger responded that he was getting the car fixed, which he said was a customer's car and gave the name (Ghosh Patel). [Doc.28-9, Tab 1 (McCabe Body Cam) / 20:36:23-37] McCabe asked about the car that was parked nearby, and Edger told her it was his. [Doc.28-9, Tab 1 (McCabe Body Cam) / 20:36:43-47]

4

McCabe watched Edger jacking up the car until the car fell off the jack, at which time McCabe asked Edger and Nuby if they had driver's licenses or IDs on them. [Doc.28-9, Tab 1 (McCabe Body Cam) / 20:36:47-37:34] Edger was placed under arrest less than 30 seconds after McCabe asked if Edger had ID on him. [Doc.28-9, Tab 1 (McCabe Body Cam) / 20:37:34-37:55]

Defendant Perillat arrived as McCabe was initially requesting Edger's ID or license. [Doc.28-9, Tab 1 (McCabe Body Cam) / 20:37:34; Doc.28-9, Tab 4 (Perillat Body Cam) / 20:11:55-12:20] Rather than asking Edger his name, his employer, or anything else to determine if there was any criminal activity afoot, McCabe demanded that Edger provide his driver's license. [Doc.28-9, Tab 1 (McCabe Body Cam) / 20:37:34-37:55] When Edger resisted providing an ID card and tried to get McCabe to call the owner of the car, McCabe and Perillat placed Edger under arrest. [Doc.28-9, Tab 1 (McCabe Body Cam) / 20:38:00-02; Doc.28-9, Tab 4 (Perillat Body Cam) / 20:11:55-12:20]

This is the complete exchange that took place prior to the arrest:

Nuby:      How you doing?
McCabe:    Good. How are y'all doing?
Nuby:      Pretty good . . . How you doing?
McCabe:    What are y'all doing?
Edger:     Huh?
McCabe:    What are y'all doing?
Edger:     Getting the car fixed.

| | |
|---|---|
| McCabe: | Is this your car? |
| Edger: | Yeah, Well, it is one of my customer's. |
| McCabe: | One of your customer's? |
| Edger: | Ghosh Patel, yep. I was over here earlier. |
| McCabe: | Whose car is that? |
| Edger: | That's mine. |
| McCabe: | The black one? |
| Edger: | Yeah. |
| Nuby: | You need me to do [inaudible]? |
| Edger: | I'm trying to . . . I need you to hold it right there. |
| McCabe: | Alright. Take a break for me real fast and do y'all have driver's license or IDs on you? |
| Edger: | I ain't going to submit to no ID right now. Listen, you call the lady right now. Listen, I don't have time for this. I don't mean to be mean, rude, or ugly, but |
| McCabe: | Okay. No, you do need to give me your ID or driver's license. |
| Edger: | I don't mean to be . . . No, I don't. Listen, I don't want you to run me in for nothing. |
| McCabe: | Are you refusing me, are you refusing to give me your ID or driver's license? |
| Edger: | I'm telling you that if you will call this lady that owns this car ... |
| McCabe: | Step over that way. |

[Doc.28-9, Tab 1 (McCabe Body Cam) / 20:36:10-37:55; Doc.28-1 / Pg. 78-79 (McCabe Body Cam Transcript)]

As the exchange shows, Edger only refused to provide a physical object, an ID card, and never refused to provide any information. To the contrary, Edger tried to assist the officers in confirming there was no crime, explaining what he was doing and trying to get the officers to call the owner of the vehicle. [Doc.28-9, Tab 1 (McCabe Body Cam) / 20:36:10-37:55; Doc.28-1 / Pg. 78-79 (McCabe Body Cam

Transcript)]

After Edger did not immediately provide an ID card, Perillat and McCabe handcuffed Edger. [Doc.28-9, Tab 1 (McCabe Body Cam) / 20:36:47-20:37:34] Edger then immediately agreed to provide his ID card. [Doc.28-9, Tab 1 (McCabe Body Cam) / 20:38:00-02] The officers retrieved Edger's ID from his wallet shortly thereafter. [Doc.28-9, Tab 4 (Perillat Body Cam) / 20:14:20-29]

McCabe never treated Edger's statement as a refusal by Edger to provide his name, only as a refusal to provide an ID card. [Doc.28-9, Tab 1 (McCabe Body Cam) / 20:36:10-37:55; Doc.28-1 / Pg. 78-79 (McCabe Body Cam Transcript) ("Okay. No, you do need to give me **your ID or driver's license**. . . . Are you refusing me, are you refusing to give me **your ID or driver's license**?") (emphasis added)] Even then, Edger did not flatly refuse to provide an ID card or otherwise cooperate. Instead, Edger tried to help McCabe confirm there was no crime happening, stating, "I'm telling you that if you will call this lady that owns this car . . ." [Doc.28-9, Tab 1 (McCabe Body Cam) / 20:36:10-37:55; Doc.28-1 / Pg. 78-79 (McCabe Body Cam Transcript)]

The officers stated or implied numerous times that Edger was arrested for refusing to provide an ID card. [See, e.g., Doc.28-9, Tab 1 (McCabe Body Cam) / 20:41:45-42:04, 20:45:43-49, 20:45:58-46:06, 20:46:49-55, 20:51:28-37,

7

20:51:55-52:02, 21:02:57-03:02, 21:03:30-34; Doc.28-9, Tab 4 (Perillat Body Cam) / 20:18:15-19:30, 20:25:10-28, 20:25:49-20:26:15]

## III.    Course of Proceedings and Disposition in the Court Below

On December 9, 2019, plaintiff Roland Edger filed this lawsuit against Krista McCabe, a Huntsville, Alabama police officer, and the city. [Doc.1] McCabe and the city answered on January 7 and 8, 2020. [Doc.6&7] Edger filed a first amended complaint that added a second officer defendant, Cameron Perillat, on February 19, 2020. [Doc.13] Defendants answered on March 4, 2020. [Doc.14-17] Edger filed a motion for partial summary judgment on December 28, 2020. [Doc.23] Defendants filed motions for summary judgment on the same date. [Doc.24-30] The district court granted defendants' motions and denied Edger's motion on November 18, 2021. [Doc.46] Edger timely filed his notice of appeal on December 16, 2021. [Doc.49]

## IV.    Standard of Review

This Court reviews rulings on summary judgment de novo. *Wood v. Kesler*, 323 F.3d 872, 877 n.8 (11th Cir. 2003). Summary judgment is not appropriate except where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Cummings v. DeKalb County*, 24 F.3d 1349, 1354 (11th Cir. 1994). On summary judgment, a court "must draw all reasonable inferences in favor of the nonmoving party, and . . . may not make credibility determinations or

8

weigh the evidence." *Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 150 (2000). A court gives credence to the "'evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, **at least to the extent that that evidence comes from disinterested witnesses**.'" *Id.* (citations omitted) (emphasis added); *Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169, 1177 (11th Cir. 2005) (quoting *Reeves*). A court considers the entire record, but "disregard[s] all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 150; *Ledbetter*, 421 F.3d at 1177 (quoting *Reeves*).

This case involves video evidence. This Court, following the Supreme Court's decision in *Scott v. Harris*, 550 U.S. 372 (2007), reviews such evidence *de novo*. *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1290 n.3 (11th Cir. 2009). When a video recording blatantly contradicts a party's testimony, it must be rejected on summary judgment. *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) (per curiam) ("Where the video obviously contradicts Plaintiff's version of the facts, we accept the video's depiction instead of Plaintiff's account. . . . So, as we must while reviewing the district court's ruling on summary judgment, we have credited Plaintiff's version of the record evidence where no obviously contradictory video evidence is available.") (citing *Scott*, 550 U.S. at 380); *see also Morton v.*

*Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013); *Perez v. Suszczynski*, 809 F.3d 1213, 1221 (11th Cir. 2016); *Mathis v. Adams*, 577 Fed. Appx. 966, 968 (11th Cir. 2014); *Skelly v. Okaloosa County Bd. Of County Comm'rs*, 415 Fed. Appx. 153, 154-55 (11th Cir. 2011).

## SUMMARY OF THE ARGUMENT

The district court looked at the facts (concerning reasonable suspicion) and the law (concerning a citizen's obligation to provide an identification card) and saw a false arrest, just not one for which any person can be held accountable. The district court got it wrong, however. The law of qualified immunity does not excuse an obviously unreasonable arrest by law enforcement officers, and this Court should reverse.

Roland Edger was a mechanic working on a customer's disabled car in a church parking lot. He was committing no crime. When officers came to investigate, it was obvious Edger was just what he seemed to be and was not committing a crime. Despite lacking reasonable suspicion, the officers seized Edger by demanding that Edger provide his driver's license. When Edger resisted providing his driver's license, defendants arrested him for not providing it even though Alabama law is clear that Edger was not required to provide his driver's license because he was not driving.

Because the officers lacked even arguable reasonable suspicion and because, even assuming reasonable suspicion, Alabama's stop and identify statute does not authorize officers to require a citizen not driving a car to produce an identification card, the officers did not have arguable probable cause, the standard for qualified

immunity in a § 1983 false arrest case, and this Court should reverse the district court's contrary holding.

For similar reasons, the district court's dismissal of Edger's state law claim should also be reversed.

## ARGUMENT

I.  **The District Court Erred in Concluding That the Officers Were Entitled to Qualified Immunity for Their False Arrest of Edger for Resisting Officers' Demands That Edger, Who Was Obviously Just a Mechanic Working on a Customer's Disabled Car, Produce an ID Card.[1]**

While "sufficient probability, not certainty, is the touchstone of reasonableness of the Fourth Amendment," *Hill v. California*, 401 U.S. 797, 804 (1971), "mere suspicion is not enough," *United States v. Allison*, 953 F.2d 1346, 1350 (11th Cir. 1992). Rather, the probable cause standard demands objective reasonableness under the totality of the circumstances:

> Probable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstances. *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). "This standard is met when 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Id.* (quoting *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995)).

*Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). The facts and circumstances analyzed are those "at the moment the arrest [is] made." *Dahl v. Holley*, 312 F.3d 1228, 1233 (11th Cir. 2002) (citations omitted) ". . . Fourth

---

[1] This brief accepts the current state of the law in which officers can assert a qualified immunity defense. Qualified immunity, however, is a judge-made doctrine not tied to § 1983's statutory language or to the common law as it existed at the time § 1983 was enacted. Plaintiff expects that at some point the qualified immunity doctrine will be overturned either by the Supreme Court or Congress. Plaintiff reserves the right to seek further review and a change in the law.

13

Amendment probable cause is a purely objective determination; the specific officer's subjective intent cannot be considered." *Jordan v. Mosley*, 487 F.3d 1350, 1357 (11th Cir. 2007).

Officers are not "permitted to turn a blind eye to exculpatory information that is available to them, and instead support their actions on selected facts they chose to focus upon." *Kingsland*, 382 F. 3d at 1228. A court on summary judgment must consider all the information "tending to exculpate" the suspect that was available to the arresting officer when the arrest was made. *Cozzi v City of Birmingham*, 892 F.3d 1288, 1297 (11th Cir. 2018).

The right not to be arrested without probable cause was clearly established long before this incident. *See Kingsland*, 382 F.2d at 1232; *Rankin*, 133 F.3d at 1435. Nevertheless, a defendant is entitled to qualified immunity even in the absence of probable cause to arrest so long as there was arguable probable cause. *Kingsland*, 382 F.2d at 1232; *see also Mowell v. City of Milton, Georgia*, 810 F. Appx. 799, 805 (11th Cir. 2020). "Whether an arresting officer possesses probable cause or arguable probable cause naturally depends on the elements of the alleged crime and the operative fact pattern." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137-38 (11th Cir. 2007) (citing *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004)).

Below, defendants McCabe and Perillat claimed they had arguable probable

cause to arrest Edger for obstructing governmental operations. To commit the offense of obstructing governmental operations, a person must intentionally prevent a public servant from performing a governmental function[2] by either 1) intimidation, 2) physical force or interference, or 3) an "independently unlawful act." Ala. Code § 13A-10-2(a)(2); *D.A.D.O. v. State*, 57 So. 3d 798, 804 (Ala. Crim. App. 2009) (citing statute commentary). Defendants contended that Edger's failure to provide an ID card constituted the independent unlawful act under two different Alabama statutes.

Edger has no disagreement with the district court's recitation of the facts. [Doc.46. / Pg. 2-6] And Edger largely agrees with the district court's legal analysis. Edger agrees that he did not in fact or even arguably attempt to intimidate the officers, use physical force, or physically interfere with the officers. [Doc.46. / Pg. 13-14, 19] Edger agrees that he was not in fact, or even arguably, driving a car and, therefore, was not subject to the requirement, in Ala. Code § 32-6-9, that persons who are "driving" provide a driver's license upon demand. [Doc.46. / Pg. 15-17 (discussing *Cantu v. City of Dothan*, 974 F.3d 1217, 1223 (11th Cir. 2020) (person sitting in driver's seat was "driving" within meaning of Ala. Code § 32-6-9))] Finally, Edger agrees that Ala. Code § 15-5-30, Alabama's stop and identify statute, did not

---

[2] Edger does not dispute that defendants, in responding to the call and speaking with him, were performing a governmental function. *See* Ala. Code § 13A-10-1(2), (3), (7).

require him to provide an ID card, only his name, if asked, and Edger was never asked his name. [Doc.46. / Pg. 14-15] It is well established that stop and identify laws, which are common throughout the country, do not require persons who are stopped to provide an ID card or other documentation. *See Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cnty.*, 542 U.S. 177, 182-83,185 (2004).

Edger disagrees with the district court on only two points: (1) whether there was arguable reasonable suspicion for an investigatory detention to justify the demand for an ID card, and (2) whether, assuming there was reasonable suspicion, officers had an arguable basis for believing Edger violated Ala. Code § 15-5-30 by refusing to provide an ID card.

### A.    Because the Totality of the Circumstances Within the Knowledge of the Officers Did Not Even Arguably Support a Reasonable Belief That Edger Was Engaged in Criminal Activity, Edger Could Not Be Lawfully Arrested for Resisting Officers' Demands for an ID card.

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Id.* (citing *United States v.*

*Sokolow*, 490 U.S. 1, 7 (1989)).

Officers have great freedom to engage in consensual encounters with citizens. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991) (stating that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions"). But when an officer starts giving commands to a citizen that require compliance, the encounter becomes a seizure that must be supported by reasonable suspicion. *See United States v. Heard*, 725 Fed. Appx. 743, 751 (11th Cir. 2018) ("[The officer]'s orders to Heard to keep his hands at his side or to raise his hands were not requests but rather commands that clearly 'convey[ed] a message that compliance . . . [was] required.' *Bostick*, 501 U.S. at 435. Thus, we analyze whether the officers had reasonable suspicion at this moment in time . . ..").

In the absence of reasonable suspicion justifying the stop, a person approached by an officer "need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way." *Florida v. Royer*, 460 U.S. 491, 497-98 (1983) (citing *Terry*, 392 U.S. at 32-33 (Harlan, J., concurring*)* and 34 (White, J., concurring)). An individual "may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds." *Id.* at 498 (citing *United States v. Mendenhall*, 446 U.S. 544, 556 (1980)). When considering whether officers had

17

reasonable suspicion to conduct a *Terry* stop, a court cannot single out particular factors; rather, it "must examine the totality of the circumstances." *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012); *Cf. District of Columbia v. Wesby*, ——— U.S. ———, 138 S.Ct. 577, 585-86, 588-89 (2018).

Thus, Edger's refusal to immediately provide ID cannot be used to justify the seizure that occurred the moment McCabe demanded ID. It is clear that a citizen cannot be lawfully arrested for refusing to comply with an unconstitutional demand. *See Morris v. Town of Lexington*, 748 F.3d 1316, 1325 (11th Cir. 2014) (citing *Kentucky v. King*, 563 U.S. 452, 470 (2011)).

And even if Edger had failed to cooperate before ID was demanded, which he did not, *Bostick* and *Royer* make clear non-cooperation is not enough for reasonable suspicion. *See Heard*, 725 Fed. Appx. at 754 ("Here, though, Heard did not flee. He was cooperative with the officers until he was asked for consent to search his person, then he protested his innocence of any wrongdoing and indicated with gestures that he did not wish to consent. To hold under these circumstances that Heard's conduct supplied reasonable suspicion would be to unreasonably narrow the ways in which an individual can indicate his refusal to cooperate during a consensual encounter with police. Neither Supreme Court caselaw nor our circuit precedent supports such a narrowing. Indeed, to give proper effect to *Bostick* and *Royer*, we must allow

18

individuals some meaningful opportunity to voice their objections through words and gestures.").

While flight can support a finding of reasonable suspicion, that Edger did not flee weighs heavily, in any objective analysis, against a finding of reasonable suspicion. *See United States v. Gray*, 213 F.3d 998, 1001 (11th Cir. 2000).

In the case of a *Terry* stop, an officer is entitled to qualified immunity if he has "arguable" reasonable suspicion. *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000). If there is no objective factual basis for the claim of reasonable suspicion, there is no qualified immunity. *Id.* Whether a stop is made with arguable reasonable suspicion is measured by a purely objective standard of what a reasonable officer in the defendant's position would have perceived. *Young v. Eslinger*, 244 Fed. Appx. 278, 279-80 (11th Cir. 2007).

No reasonable jury can conclude the officers had even arguable reasonable suspicion to believe Edger was committing a crime once they made contact with Edger. The totality of the circumstances showed that no criminal activity was afoot. While the security guard's call certainly gave the officers a good reason to contact Edger, after the officers observed Edger and Nuby and spoke with Edger, the totality of the circumstances showed non-criminal activity, a mechanic working on the church employee's car. And nothing Edger and his stepson did when the officers contacted

19

them indicated there was criminal activity afoot. They did not flee or otherwise act suspicious. They answered questions. Edger confirmed the obvious and even tried to assist the officers in contacting the customer. Instead of simply contacting the customer or asking further questions, McCabe escalated the encounter by illegally demanding that Edger and Nuby provide ID cards.

The district court acknowledges that it is "clear" and "obvious" that the men were replacing a tire. [Doc.46 / Pg. 11] Edger agrees. What was obvious to the district court, would also have been obvious to a reasonable officer. Criminal activity was not afoot, and defendant McCabe had no basis for initiating a seizure by demanding Edger's driver's license. Because there was no basis for the seizure, there was no basis for the arrest.

> **B.** **Even if the Officers Had Arguable Reasonable Suspicion, the Officers Did Not Have Arguable Probable Cause to Arrest Edger for Resisting Officers' Demand for an ID Card Because Alabama, like Every Other State, Only Requires Drivers to Carry an ID Card.**

Even if there was arguable reasonable suspicion, there was no basis for the arrest.

Alabama law only authorizes officers who have reasonable suspicion to ask an individual for his or her "name, address and an explanation of his actions." Ala. Code

§ 15-5-30.[3] It says nothing about identification cards or driver's licenses. Thus, the district court recognized that Edger could not be required to provide an identification card under this statute. [Doc.46. / Pg. 14-15] Nevertheless, the district court concluded that a reasonable officer could read a driver's license requirement into an Alabama statute that clearly does not have one. [Doc.46 / Pg. 19 ("The undisputed bodycam footage makes clear that McCabe didn't ask Edger for his name, and Edger didn't refuse to explain his actions according to § 15-5-30. However, a reasonable but mistaken officer could've believed that Edger's failure to provide his driver's license violated Ala. Code § 15-5-30."]

Given the clarity of Alabama law on this issue, the district court erred in using qualified immunity to excuse the officer's obviously unlawful conduct.

## II. Because a Reasonable Jury Could Find That the Officers Lacked Probable or Arguable Probable Cause to Arrest Edger, the District Court Erred in Granting Defendants' Motion for Summary Judgment on Edger's State Law False Arrest Claim.

Municipal police officers in Alabama are entitled to immunity under the same

---

[3] The statute provides in full: "A sheriff or other officer acting as sheriff, his deputy or any constable, acting within their respective counties, any marshal, deputy marshal or policeman of any incorporated city or town within the limits of the county or any highway patrolman or state trooper may stop any person abroad in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or other public offense and may demand of him his name, address and an explanation of his actions." Ala. Code § 15-5-30.

terms as state agents, pursuant to the rules established in *Ex Parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000). *Ex Parte City of Tuskegee*, 932 So. 2d 895, 903-04 (Ala. 2005). Under *Cranman*, as a general matter, there is no personal liability for officials "exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons." 792 So. 2d at 405. As applicable here there are two exceptions to this immunity, "(1) when the Constitution or laws of the United States . . . require otherwise; [and] (2) when the [officer] acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken impression of the law." *Id*. If an officer lacks arguable probable cause he is not entitled to immunity. *Borders v. City of Huntsville*, 875 So. 2d 1168, 1180 (Ala. 2003).

Because a reasonable jury can conclude the officers lacked arguable probable cause to arrest Edger for the reasons stated above, the district court erred in granting the officers' motion for summary judgment on Edger's state law claim.

## III. Because the Evidence Would Permit a Reasonable Jury to Conclude the Officers Acted Under a Mistaken Impression of the Law, the District Court Erred in Granting the City's Motion for Summary Judgment on Edger's State Law False Arrest Claim.

In *Borders*, the Alabama Supreme Court addressed when municipalities, which are only liable for negligence under Ala. Code § 11-47-190, can be sued for police actions. *Id.* at 1182-84. The court distinguished malicious prosecution claims, which

22

it held were inconsistent with negligence, from false arrest and excessive force claims, which can be asserted consistent with negligence. *Id*. The court made clear that a city can be held liable for false arrest if the fact pattern reflects negligence. *Id*. at 1183-84.

There is no question that a false arrest claim based on conduct that is clearly willful, malicious, or in bad faith is inconsistent with negligence and properly dismissed on summary judgment. *See Brown v. City of Huntsville*, 608 F.3d 724, 742-43 (11th Cir. 2010). Edger's claim here, however, is consistent with negligence. A reasonable jury can conclude the officers had a "mistaken impression of the law" in the language of *Cranman*. Because Edger's evidence, unlike the evidence in *Brown*, suggests a misunderstanding of the law, that evidence encompasses a negligence claim, and the City is not immune as a matter of law. *Borders*, 875 So. 2d at 1183-84; *see also Franklin v. City of Huntsville*, 670 So. 2d 848, 852 (Ala. 1995).

## CONCLUSION

In summary, both the facts and the law are clear. Edger was a mechanic working on a customer's car, and no reasonable officer would have thought Edger was committing a crime. The demand for Edger's ID card converted a consensual encounter into a seizure for which reasonable suspicion was required, which the officers did not even arguably have. Even if defendants had arguable reasonable

suspicion to believe Edger was committing a crime, because Edger was not driving, they were not entitled to demand that Edger provide an ID card and could not lawfully arrest Edger for refusing to provide an ID card.

Accordingly, for the above-stated reasons, this Court should reverse the district court's order granting defendants' motions for summary judgment. It may also be appropriate for the Court to enter a judgment on liability in Edger's favor on the § 1983 claim against the officers, though Edger did not appeal the denial of his motion for partial summary judgment on that claim. There are no material facts in dispute.

Respectfully submitted,


 s/ Henry F. (Hank) Sherrod III
Henry F. (Hank) Sherrod III
HENRY F. SHERROD III, P.C.
119 South Court Street
Florence, Alabama 35630
(256) 764-4141

*Attorney for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(I) and 11th Cir. Local Rule 32-4. It contains 6,319 words, including the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. 32-4.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). It has been prepared in a proportionally-spaced typeface using WordPerfect 2020 in 14-point Times New Roman.


 s/ Henry F. (Hank) Sherrod III

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2022, I caused the brief for appellant to be served by ECF and arranged to have one paper copy served upon counsel of record.


 s/ Henry F. (Hank) Sherrod III